**Ohio Dominican College v. Krone**
**Case No. 89AP227**
**Franklin County, (10th)**
**Decided January 11, 1990**
[Cite as 1 AOA 381]

*Lane, Alton & Horst, and Mr. Jack R. Alton, for appellee.*

*Gayton, Tilton & Endres, and Mr. Charles W. Gayton, for appellant.*

YOUNG, J.

This matter is before this court upon the appeal of Joan Krone, appellant, from a judgment of the Franklin County Court of Common Pleas in favor of appellee, Ohio Dominican College ("O.D.C."). Appellant had been employed at O.D.C. since 1967. Prior to the time this dispute arose, appellant was a tenured assistant professor and chairperson of the mathematics department. In 1982, O.D.C. received a Federal Title III Challenge Grant to provide funding for establishing a computer science degree program at O.D.C. The terms of the grant permitted funds to be used to pay a person's salary, tuition and books in order for them to qualify and gain the credentials and expertise necessary to develop the computer science degree program. It was the understanding of both parties that appellant would acquire the needed credentials and return to O.D.C. full time to develop and head the computer science degree program. Appellant and appellee made the following "agreement": appellant was granted leave to attend the Ohio State University ("O.S.U.") for the 1982-1983 academic year to pursue a Master's degree in computer science. O.D.C. agreed to pay appellant's salary and provide her with benefits. Additionally, O.D.C. agreed to reimburse appellant for tuition, fees, and textbooks. Upon her return, appellant agreed to teach full time at O.D.C. for a period twice as long as the period of paid leave and reimburse O.D.C. if she chose to leave employment before her teaching obligation was satisfied. The continuation of this agreement into the 1983-1984 academic year was negotiable. Under this agreement, appellant was still obligated to perform her department chairperson duties.

In February 1983, appellant was promoted to Associate Professor; in June 1983, she completed the Master's degree program in computer science. On June 28, 1989, the President of O.D.C., Sister Mary Andrew Matesich, sent a letter to appellant detailing a "payback" scheme for appellant's 1982-1983 leave. In July 1983, appellee and appellant entered into another agreement: O.D.C. granted a leave to appellant for the 1983-1984 academic year. O.D.C. would continue to pay her salary and provide her with benefits and reimburse the cost of her tuition, fees and textbooks from July 1, 1983 to December 31, 1983. Appellant was granted leave without pay from January 1 through June 30, 1984, but with protection of her tenured position until the fall of 1984, according to the contract terms. Appellant agreed to perform six other tasks during the 1983-1984 academic year. Appellant agreed to O.S.U. full time while enrolled in a computer science degree program and subsequently to teach full time at O.D.C. for twice the length of time as the period of paid leave.

In April 1984, appellant met with Joan Connell, Vice President for Academic Affairs to discuss appellant's duties for the 1984-1985 academic year. On April 9, 1984, O.D.C. offered appellant a one-half time contract for the 1984 fall semester. The six month contract provided compensation in the amount $5,500. Appellant signed and returned this contract but changed the salary amount to $10,000.

On April 30, 1984, the O.D.C. president sent appellant a letter rejecting appellant's previous counteroffer, and offered appellant a full-time teaching contract at a salary amount of $22,000. The letter included a provisions that if the contract was not signed and returned by May 10, 1984, then O.D.C. would interpret that conduct as appellant's resignation and forfeiture of tenure. On May 9, 1984, appellant sent a letter to the O.D.C. president explaining her objections to the proposed contract and requested a meeting. On May 17,1984, appellant met with the O.D.C. president and the academic vice president. It was O.D.C.'s position that there would be no further negotiating on the contract offered to appellant. However, there is evidence in the record that O.D.C. was negotiating with Kenneth Solveson during this same time period. Kenneth Solveson was offered a contract by O.D.C. on May 21, 1984 and accepted the twelve month position at a salary of $25,000. On May 30, 1984, the academic vice president sent appellant a letter indicating that appellant had forfeited her tenure by failing to sign and return the proposed contract. The letter also indicated that

appellant would have to begin reimbursing O.D.C. by July 1, 1984.

On June 13, 1984, appellant sent a letter to the O.D.C. president and the vice president of academic affairs in response. She asked that: (1) her two-year leave be considered as a retroactive sabbatical; (2) outlined the tasks she had performed in preparation of her return to O.D.C. to develop the computer science degree program; and (3) indicated that she could not sign the proposed contract since the salary and the responsibilities listed were unreasonable. Appellant also requested that a copy of her letter be given to the Rank, Tenure, and Promotion Committee for consideration of her request. The Rank, Tenure and Promotion Committee consists of the president, vice president for academic affairs, and five full-time elected teaching faculty members. Thus, two members of the Rank, Tenure and Promotion Committee, Sister Mary Andrew Matesich and Dr. Joan Connell, had already been informed. Appellant's request was not considered by the Rank, Tenure and Promotion Committee.

On June 19, 1984, Mr. James Albers, O.D.C.'s attorney, sent a letter to appellant demanding payment in the amount of $30,501. On July 6, 1984, appellant responded to his letter explaining her rationale that the terms of O.D.C.'s proposed contract were unreasonable and thus, she was unable to sign it. O.D.C. has a faculty handbook which sets forth, among many other things, procedures for grievances and the dismissal of faculty.

In October 1983, appellant filed this action against appellee for reimbursement of salary, fringe benefits, tuition, fees and textbook moneys which were expended on her behalf during the 1982-1984 academic years. Appellant filed a counterclaim for wrongful termination. After a trial to the bench, the trial court granted judgment in favor of appellee in the amount of $30,501. Thereafter, appellant filed this appeal and asserts the following seven assignments of error:

"I. THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY FAILING TO CONCLUDE THAT APPELLANT WAS DENIED A PRE-TERMINATION HEARING IN VIOLATION OF THE DUE PROCESS OF LAW REQUIREMENT OF THE OHIO CONSTITUTION AND THE 14TH AMENDMENT OF THE U.S. CONSTITUTION.

"II. THE TRIAL COURT FINDING THAT APPELLEE DEALT IN GOOD FAITH WITH APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"III. THE TRIAL COURT FINDING THAT APPELLANT DID NOT FILE A COMPLAINT WITH THE RANK, TENURE AND PROMOTION COMMITTEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"IV. THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY CONCLUDING THAT APPELLANT'S FAILURE TO RETURN TO FACULTY STATUS AS OFFERED BY APPELLEE CONSTITUTED A RESIGNATION, FORFEITURE AND TERMINATION OF HER TENURE.

"V. THE TRIAL COURT ERRED BY FAILING TO FIND THAT APPELLEE DISCRIMINATED AGAINST APPELLANT WITH THE HIRING OF SOLVESON.

"VI. THE FINAL ORDER OF THE TRIAL COURT GRANTING JUDGMENT TO APPELLEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"VII. THE FINAL ORDER OF THE TRIAL COURT DISMISSING APPELLANT'S COUNTERCLAIM IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

Appellee has filed the following cross-assignment of error:

"I. THE TRIAL COURT ERRED IN FAILING TO GRANT [APPELLEE] PREJUDGMENT INTEREST AT THE RATE OF 10% PER ANNUM COMMENCING JULY 1, 1984, BASED UPON BREACH OF CONTRACT OF APPELLEE/DEFENDANT JOAN KRONE."

Appellant's assignments of error two, three, four, and six are interrelated and the disposition of these assignments of error will necessarily determine the issues germane to this appeal. Appellant asserts that the trial court's judgment is against the manifest weight of the evidence on the basis that: (1) appellee did not negotiate in good faith; (2) appellant filed a complaint with the Rank, Tenure and Promotion Committee; and (3) appellant did not resign from her tenured position. The concept

of "tenure" is a source of many rights and is unique to each set of given circumstances considering whether the setting is a public or private institution, and depending upon whether the source of the rights is statutory, contractual or constitutional. Tenure bestows upon a person the right to continuous employment and in the facts before this court, the tenure agreement between appellant and O.D.C. is a contract which is to be considered separate from the other agreements made between the parties and discussed herein.

In analyzing the separate tenure argument between the parties, it is apparent that the source of appellant's tenure rights are contractual in nature. The Faculty Handbook, Section 7(A) states as follows:

"Section 7. *Dismissal of Faculty*
"A)An appointment with continuous tenure is terminable by the institution only for grave cause or on account of extraordinary financial emergencies. Grave cause shall include demonstrated incompetence, crime, or similar grave matters."

Clearly, O.D.C. was not experiencing an extraordinary financial emergency which would serve as a basis for terminating appellant's employment. Thus, this court needs to determine whether appellant's conduct constituted grave cause as defined in Section 7(A) of the Faculty Handbook. The parties were negotiating appellant's contract for the 1984-1985 academic year and could not reach an agreement as to appellant's teaching assignment, additional responsibilities, or salary. Appellant was also trying to negotiate terms, in the alternative, whereby her thirty-six month teaching obligation to O.D.C. would be waived in consideration for her teaching a semester and foregoing her salary. It is important to emphasize that the agreement which was being negotiated by the parties was something different and separate from the contract for tenure between the parties. When the parties seemed to have reached an impasse, the President of O.D.C., Sister Mary Andrew Matesich, wrote the following letter to appellant, dated April 30, 1984:

"It is not possible to accept the contract for employment for the 1984-85 academic year as you have amended it. \*\*\* Ohio Dominican College is offering you a full-time reappointment as a tenured faculty member with the rank of Associate Professor in the Department of Mathematics and Computer Science for the academic year 1984-85 at a salary of $22,000. \*\*\*
"The responsibilities included in this contract will include teaching five courses and performing the administrative duties for the computer science program which are listed below.
"\*\*\*
"Please sign and return the enclosed contract by May 10, 1984. *If the contract is not received by that date, its absence will be interpreted as your resignation from the faculty and your forfeiture of tenure.*" (Emphasis added.)

In examining the Faculty Handbook, Article IV, Section 4 states as follows:

"Section 4. *Faculty Load Policy.*
"Full load shall ordinarily consist of teaching three courses per semester \*\*\*."

Since a full load is normally three courses and appellant's contract required her to teach five courses, appellant found the terms of the proposed contract to be more than a full-time commitment and totally unrealistic. Consequently, she did not sign or return the proposed contract to Sister Mary Andrew Matesich and requested a meeting. Appellant responded to Sister Mary Matesich and Dr. Connell in a letter dated June 13, 1984:

"The purpose of my letter is to request, while I am still a tenured member of the Ohio Dominican College faculty, that my leave taken during academic year 1982-83 and the first half of 1983-1984 be considered as a retroactive sabbatical. \*\*\*
"\*\*\*
"During the spring of 1984 I made efforts to negotiate a contract for my return to teaching at Ohio Dominican College, requesting that consideration be given to my 14 years of service, my tenure, my rank as Associate Professor, my credentials - an M.S. in Math, a Ph.D, candidate in Computer Science. The three contracts and suggested revisions are on file. The third contract which offered only $22,000 for a list of responsibilities that is really more than full-time commitment [*sic*] was accompanied by a letter stating that either

I must sign that contract by May 10th or Ohio Dominican College would take away my tenure.

"I could not sign the proposed contract because both the salary offered and the responsibilities listed were not reasonable.

"I request that a copy of this letter be given to the Rank, Tenure, and Promotion Committee for its consideration of my request."

Appellant's conduct, in not signing and returning a proposed contract that included terms of employment which were unacceptable to her, cannot serve as the basis for O.D.C. terminating appellant for grave cause as set forth in Section 7(A) in the Faculty Handbook. Furthermore, upon review of the record, there is no contractual provision in the Faculty Handbook which O.D.C. can invoke that grants authority to O.D.C. to unilaterally demand the signing and returning of a contract from a tenured professor by a specified date, and interpret the failure of that action to be a forfeiture of tenure. The record is devoid of any written letter of resignation and, although O.D.C. could interpret appellant's failure to return the proposed contract as a rejection of the counteroffer, it could not terminate appellant's tenured position without a finding of grave cause without violating the separate tenure agreement.

The only provision in the Faculty Handbook which is remotely related to a time demand is Section 6(A) which states that if a faculty member intends to decline a renewal he/she shall give notice no later than two weeks after being offered the contract. However, there is no evidence in the record which indicates appellant's intention not to renew her employment with O.D.C. To the contrary, appellant signed and returned the April 20, 1984 contract proposal and added her salary modification to the terms of employment. Thus, appellant responded in the affirmative that she intended to resume her employment at O.D.C., but not without some further negotiation regarding the terms of the proposed contract which she considered to be unreasonable, and by the standards set forth in the Faculty Handbook, were unreasonable. Furthermore, the contract between appellant and O.D.C. for the term January 1 through June 30, 1984, states, in pertinent part:

"The terms are leave without pay with no fringe benefits but protection of the tenured position until fall of 1984."

Thus, appellant had a contractual right to continued employment until the fall of 1984 unless there was a finding of grave cause which would terminate her employment before that time period.

Furthermore, in appellant's June 13, 1984 letters to Sister Mary Andrew Matesich and Dr. Connell, appellant requested that a copy of her letter be given to the Rank, Tenure and Promotion Committee for consideration of her request. The Faculty Handbook requires that such a letter be sent to the committee directly by the person making a request. The Rank, Tenure and Promotion Committee consists of Sister Mary Andrew Matesich and Dr. Connell and five other faculty members. Thus, although appellant did not address her request directly to the committee *per se*, two of the committee members were presented with her request and they did not place the issue before the committee as a whole.

Accordingly, O.D.C. breached appellant's contract for tenure by unilaterally setting forth a condition for continued employment. O.D.C. made appellant's tenured position conditional upon the signing and returning, by May 10, 1984, of a proposed employment contract, a contract whose terms were totally unacceptable to appellant and which terms exceeded the reasonable expectations as set forth in the Faculty Handbook. Having no evidence before it regarding an affirmative act or written intent of voluntary resignation by appellant, the trial court erred when it equated as grave cause appellant's conduct in not signing and returning the proposed employment contract by May 10, 1984. The trial court's decision was against the manifest weight of the evidence. Accordingly, appellant's second, third, fourth and sixth assignments of error are well-taken and are sustained.

In the first assignment of error, appellant asserts that she was denied a hearing in violation of the Due Process Clauses of the Ohio Constitution and the Fourteenth Amendment to the United States. Constitutional questions will not be decided until the necessity for their decision arises. *State, ex rel. Lieux*, v. *Village of Westlake* (1951), 154 Ohio St. 412, paragraph one of the syllabus. Since this court's disposition of appellant's second, third, fourth and sixth assignments of error obviates the need to address the constitutional issues

asserted in the first assignment of error, that assignment of error is not well-taken and is overruled.

The fifth assignment of error asserts that the trial court erred by failing to find that the appellee discriminated against appellant when it hired Kenneth Solveson. Upon review, the evidence fails to show that Solveson was hired to perform the job duties that were being negotiated and offered to appellant. The agreement between O.D.C. and appellant specifically set forth that appellant would work full time to establish and develop a computer science major upon her return to O.D.C. Initially, however, O.D.C. only offered appellant a part-time position upon her return. Although appellant accepted the part-time position, she modified the offer by increasing the amount of salary to be paid to her. O.D.C. rejected this counteroffer and only then offered appellant a full-time position, which contract appellant rejected due to its unreasonable terms. It is apparent from the record that Solveson only negotiated for, and finally accepted, a full-time, twelve-month teaching position. Since appellant initially accepted O.D.C.'s offer of a part-time position, she obviously accepted an alteration of the original agreement between the parties which required appellee to employ appellant on a nine-month, full-time basis to establish and develop a computer science major at O.D.C. In initially accepting O.D.C.'s part-time proposal which was less demanding of appellant's time, appellant cannot now assert a claim for discrimination when the record indicates that Solveson was offered and accepted a twelve-month, full-time position. Accordingly, appellant's fifth assignment of error is not well-taken and is overruled.

In her seventh assignment of error, appellant asserts that the dismissal of the counterclaim was against the manifest weight of the evidence. Upon review, and in light of this court's disposition of appellant's second, third, fourth and sixth assignments of error, it was against the manifest weight of the evidence for the trial court to dismiss appellant's counterclaim since the evidence overwhelmingly supports the conclusion that O.D.C. breached its tenure agreement with appellant. Appellant is entitled to reinstatement in order to meet her thirty-six month teaching obligation to O.D.C. Accordingly, appellant's seventh assignment of error is well-taken and is sustained.

Appellee asserts in its cross-assignment of error that the trial court erred in not granting prejudgment interest. Since this court has determined that the matter herein warrants reversal, appellant's cross-assignment of error is not well-taken and is overruled.

Based on the foregoing, appellant's second, third, fourth, sixth and seventh assignments of error are well-taken and sustained. Appellant's first and fifth assignments of error and appellee's cross-assignment of error are not well-taken and are overruled. The judgment of the Franklin County of Common Pleas is reversed and the matter is remanded for further proceedings to institute appellant's reinstatement, or, in the alternative, to determine the amount of damages.

*Judgment reversed and remanded.*

BOWMAN, J., Concurs.
STRAUSBAUGH, J., dissenting:
I regret being unable to concur in the opinion rendered by my colleagues. Being of the opinion that the judgment of the trial court is correct, I would overrule the assignments of error in the appeal and cross-appeal and affirm the judgment of the common pleas court.